**M. Ruth BONE, Plaintiff–Appellee,**

v.

**CITY OF LAFAYETTE, INDIANA, and Maurice E. Callahan, Defendants–Appellants.**

**No. 90–1217.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 5, 1990.

Decided Nov. 28, 1990.

Richard O. Bovey, Lafayette, Ind., for plaintiff-appellee.

Richard T. Heide and Mathew S. Sandy, Heide, Sandy, Deets, Kennedy, Schrader & Antalis, Lafayette, Ind., for defendants-appellants.

Before CUMMINGS, FLAUM and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

Almost fifteen years ago M. Ruth Bone filed this suit against the City of Lafayette, Indiana, and Maurice Callahan, its City Engineer. It has run through four district judges (two since appointed to this court) and has been here once before. 763 F.2d 295 (7th Cir.1985). Today it comes to an end—on the ground that it should not have been commenced.

In 1964 Bone purchased a one-acre parcel of land on which stood a single-family house. In 1966 she built a second house there. Lafayette issued a building permit even though the second house violated local zoning rules, because the parcel had not been subdivided. In 1975 Bone proposed to build still a third house on this tract, still without subdivision. She spoke with Maurice Callahan, the City Engineer, and Charles Yoder, a building inspector. Together they reviewed the plat books and discussed the steps Bone would have to

take to obtain a building permit. Although the plat books showed the lack of subdivision, neither Callahan nor Yoder called the problem to Bone's attention. After Bone obtained a survey of the land, Yoder told her to go ahead. First Federal Savings and Loan Association of Lafayette agreed to provide the financing.

Bone submitted an application for the building permit, certifying that the plans complied with all applicable laws. In August 1975 the Lafayette Board of Public Works issued the building permit, and construction began immediately. One of Bone's neighbors complained, and after work had been under way for six weeks the City issued a stop order, citing the lack of subdivision. Albert Strain of the S & L called Callahan and asked why. According to Strain, Callahan responded: "She lied to us, and she's not going to get that building permit." (Callahan was too ill to testify and has since died. Bone has neglected to substitute Callahan's estate as a defendant, an omission of no consequence given the disposition that follows.)

Although Bone could have appealed the stop order to the Tippecanoe County Board of Zoning Appeals, she did not. Instead she filed an action in state court, seeking a declaratory judgment that she was entitled to proceed with construction. She lost; the court held that under the local ordinance only one house could be constructed on a plot. Bone did not appeal from this decision. She tried to obtain a subdivision of the one-acre tract into three plots; the Tippecanoe County Area Plan Commission would allow only two. Bone completed the house then under construction but was required to tear down one of the older houses.

Frustrated by the local agencies and state court, Bone turned to federal court, filing this suit under 42 U.S.C. § 1983. She contended that the stop order and need to dismantle one house deprived her of property without due process of law. The case was assigned initially to Judge Eschbach, who denied defendants' motion to dismiss. After Judge Eschbach's appointment to this court, the case was assigned to Judge Sharp. When the trial came in 1982, he "thought this case was a total waste of time" until he heard Strain testify that Callahan had called Bone a liar. Finding this statement reckless, Judge Sharp held Callahan and the City jointly and severally liable for $17,500 in compensatory damages, and he added $35,000 in punitive damages against Callahan. The judge did not say what the $17,500 represented or how defamation violated Bone's constitutional rights, given *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). This led us to reverse the judgment and to remand so that the court could determine whether Callahan's statements deprived Bone of a liberty or property interest.

Judge Kanne, to whom the case was assigned on remand, held that a claim of defamation had been tried by consent, so that Fed.R.Civ.P. 15(b) allowed Bone to amend her complaint to make a pendent defamation claim under state law. He surrendered the case on appointment to this court, and Judge Lee became the fourth district judge to take charge. Judge Lee concluded that a second trial is unnecessary, because the first brought out all of the facts. He dismissed Bone's claims under the Constitution, holding that the City had not violated her rights in enforcing its subdivision rule and that Callahan's statements had not deprived her of liberty or property—in large measure because Bone "was unable to clarify for the court what damages or adverse consequences, if any, flowed from the defamation and what damages flowed from the revocation of the building permit." The permit itself was not "property" because under state law a permit issued in violation of law is void. Because "the Bone residence did not comply with the controlling zoning ordinances, as Judge King has already determined in his unappealed decision, ... the permit was invalid from the start."

Judge Lee declined to reexamine Judge Sharp's conclusions about defamation, however, believing that our opinion in 1985 is the law of the case. "The Court of Appeals obviously decided, at least by implication, that Judge Sharp's finding of defamation should not be disturbed, else there

would be no need for this court to determine whether plaintiff met the test of *Paul v. Davis*". He entered a fresh judgment of $17,500 in compensatory damages against both defendants and $35,000 in punitive damages against Callahan. Although he did not discuss whether this was within his jurisdiction—for there is no diversity of citizenship, and he had just dismissed all of the claims under federal law—we do not think this an insuperable hurdle. Pendent jurisdiction is a discretionary doctrine, one designed to conserve everyone's time and energy. Judge Lee used a trial in 1982 and an appellate decision in 1985 as the basis of decision. It would have been wasteful to expel the defamation claim from federal court after Judge Kanne concluded that it had been tried by consent in 1982. See *Hagans v. Levine*, 415 U.S. 528, 545–46, 94 S.Ct. 1372, 1383–84, 39 L.Ed.2d 577 (1974).

Our decision in 1985 does not support Bone's claim of defamation. We held that falsehoods do not themselves deprive a person of liberty or property, and we remanded so that the district court could determine whether the conditions of a constitutional tort had been satisfied. We had no occasion to decide whether Bone had established defamation under the law of Indiana, because that was not the basis of Judge Sharp's decision and was not one of Bone's theories. Only in 1987, when Judge Kanne granted the motion to amend the complaint under Rule 15(b), did state-law defamation become a potential ground of relief. Subjects an appellate court does not discuss, because the parties did not raise them, do not become the law of the case by default.

■ What, then, are we to do? We could remand the case for still more proceedings in the district court, including the second trial that Judge Kanne's order of 1987 contemplated. But there will never be any additional information now that Callahan is permanently unavailable to testify, and it would be gratuitous cruelty to Ms. Bone to raise false hopes. No judgment in her favor could be sustained. It is time to bring this case to a close.

Judge Lee's observation that Bone "was unable to clarify for the court what damages or adverse consequences, if any, flowed from the defamation and what damages flowed from the revocation of the building permit" would require us to reduce any award to nominal damages. (Bone has not contested this conclusion on appeal or asked us to resurrect her constitutional claims.) Even nominal damages are unavailable, however, if there was no defamation. Callahan accused Bone of lying. Although this could have meant lying in the verbal exchanges that preceded the application for the building permit, Judge Sharp evidently construed the statement as a reference to the application itself. And this application contained a misstatement. Bone verified that her proposal complied with all applicable laws. It did not: it flunked the rule that no more than one house may be built on a plot of land. The state court authoritatively established that Bone's application indeed failed to comply with the law. So her certification that it did comply was false. Judge Sharp did not mention this; neither did Judge Lee. Truth is a defense to a defamation action in Indiana, as in other states. Ind. Const. art. I § 10; Ind.Code § 34–1–5–2; *Palmer v. Adams*, 136 Ind. 72, 36 N.E. 695 (1894).

■ Callahan might have told the officer from the S & L that the stop order had been issued because Bone's proposal did not comply with the local codes; an alternative way to put this would have been to say that although Bone asserted that her proposal complied with the zoning laws (something she must have said to the construction lender as well), her statement was incorrect. "She lied" is an uncivil way to make the point, but it is substantially true—a conclusion put beyond our ken by 28 U.S.C. § 1738, which requires federal courts to give to state judgments the same effect the state itself would. Indiana enforces a rule of issue preclusion (collateral estoppel), forbidding the relitigation of an issue that has been determined between these parties or their privies. *Webb v. State*, 453 N.E.2d 180 (Ind.1983); *Town of Flora v. Indiana Service Corp.*, 222 Ind. 253, 53 N.E.2d 161 (1944). Bone litigated and lost against the City a claim that her application satisfied local law. That loss establishes that the verification on her ap-

plication was false. Callahan was in privity with the City (he acted throughout as its servant) and so may obtain the benefit of the judgment in the City's favor.

At oral argument Bone's lawyer tried to avoid this conclusion by observing that in 1976 Judge Eschbach denied defendants' motion to dismiss, a motion based on the preclusive effect of the state decision. At the time Judge Eschbach acted, however, all of Bone's claims were based on the due process clause. Judge Eschbach observed that under state law "the state court had jurisdiction to consider only the construction and interpretation of the local ordinance and could not entertain any claim by [Bone] that the application of the ordinance was unconstitutional. Questions relating to the constitutionality of an application of a zoning ordinance must be first presented to the local board of zoning appeals. A trial court obtains jurisdiction to consider these issues only on writ of certiorari from the decision of the board of zoning appeals." Consequently, Judge Eschbach held, the state court could interpret and apply the ordinance but not make a constitutional decision. That forbade the application of claim preclusion to the constitutional claims. Now that the constitutional questions have dropped out, it is precisely the interpretation and application of the zoning ordinance that bind Bone. A state court authoritatively decided that local law barred the construction of three houses on a tract that had not been subdivided. Issue preclusion (collateral estoppel) applies even though Judge Eschbach determined that claim preclusion does not knock out constitutional arguments that could not have been raised in the state court.

Bone's verification that her application for a building permit complied with these ordinances was false. Callahan accused her of uttering a falsehood, which she had. He might have picked a kinder, gentler (and more informative) phrase, but the words he chose were not actionable.

REVERSED.