**The PANTRY, INC., Plaintiff,**

v.

**STOP–N–GO FOODS, INC., and Tri–State Stop–N–Go, Inc., Defendants.**

**No. IP 88–1345–C.**

United States District Court, S.D. Indiana, Indianapolis Division.

June 29, 1992.

William C. Barnard, Frank J. DeVeau, Sommer & Barnard, P.C., Indianapolis, Ind., for plaintiff.

Robert F. Wagner, R. Robert Stommel, Lewis Bowman St. Clair & Wagner, Indianapolis, Ind., for defendants.

## ENTRY DISCUSSING DEFENDANTS' MOTION TO RECONSIDER PARTIAL SUMMARY JUDGMENT

TINDER, District Judge.

Stop–N–Go moved the Court to reconsider three decisions in a prior Order entered in this matter. Each of these challenged decisions is addressed and resolved below.

### I. SCOPE OF PARTIAL SUMMARY JUDGMENT ORDER

Defendants (collectively referred to in the singular as "Stop–N–Go") requested the Court to make clear the scope of a prior summary judgment ruling. In so doing, Stop–N–Go misapprehended the Court's prior Order. The Order stated in part as follows:

> Count I of plaintiff's amended complaint alleges that defendants breached certain environmental warranties in the Purchase Agreement. Summary judgment is granted in part in favor of the plaintiff on this claim because the presence and concentration of benzene on the Indiana properties violated an environmental warranty. Summary judgment is also granted because a pump operating at one of the Indiana properties discharged wastewater without a required permit; this condition violated an environmental warranty also.

(Order Granting Summ.J. in Part and Den. in Part at 1.) As stated and as intended, that prior Judgment adjudged Stop–N–Go's liability under Count I of the Amended Complaint.

Stop–N–Go's singular goal in making its strained argument regarding the scope of the Judgment is to avoid the conclusion that Stop–N–Go implicitly waived its affirmative defenses by failing to argue or support them in response to Plaintiff's Motion.[1] Stop–N–Go's Brief in Support of its Motion to Reconsider argued that Plaintiff's Motion for Partial Summary Judgment requested judgment on a sub-issue of contractual liability and not the complete issue of liability. Stop–N–Go seemed to argue that The Pantry requested judgment only on a single element of its breach of contract claim as stated in Count I of the Amended Complaint. Not so.

A reasonable, logical reading of Plaintiff's Motion discloses that Plaintiff requested a judgment finding in Plaintiff's favor on the *issue* of liability and not merely a component *element* of that issue (whether there was a breach). A movant's Proposed Summary Judgment, required in this federal district by Local Rule 56.1, and the movant's Motion for Summary Judgment determine the scope of the movant's request. The movant's Proposed Summary Judgment is particularly important because the movant specifically requests and agrees to be bound by the judgment terms contained therein. Plaintiff's Proposed Summary Judgment Order, filed on October 17, 1989, resolves any doubt regarding the scope of the judgment requested and

---

1. Stop–N–Go argued that it "seeks only to preserve its right to assert those affirmative defenses at trial." (Defs.' Reply Br.Supp.Mot.Recons. at 6.) As the discussion below concludes, Stop–N–Go has no such right regarding the issue of liability resolved in the Court's Judgment. The issue to which those defenses applied, the ultimate issue of liability, has been resolved against Stop–N–Go and presents no further question of material fact to be determined at trial.

entered. The document proposed as follows:

> the Court hereby finds that there is no issue of material fact and that The Pantry is entitled to partial summary judgment as to the liability of [Stop–N–Go] for breaching the parties' Asset Purchase Agreement.
>
> . . . .
>
> IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that The Pantry's motion for partial summary judgment is hereby GRANTED and JUDGMENT is hereby entered for The Pantry on the issue of liability.

(Pl.'s Partial Summ.J. Order at 1–2.)

Thus, it is plain that Plaintiff requested a judgment on the issue of liability for breach of the Asset Purchase Agreement, as provided by Rule 56(c) of the Federal Rules of Civil Procedure: "A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages." Fed.R.Civ.P. 56(c). There are two issues predicate to a final judgment in an action at law: liability and damages. The single issue not addressed in Plaintiff's Motion was the issue of damages; Plaintiff's Motion sought to resolve the issue of liability, all elements thereof necessarily included. The Court's October 22, 1991 Order Granting Summary Judgment in Part and Denying in Part properly entered judgment in Plaintiff's favor on the issue whether Stop–N–Go was liable on the breach of contract claim stated in Count I of the Amended Complaint.

■ Given the scope of that Summary Judgment Order, Stop–N–Go's argument regarding the continuing viability of its defenses to liability is without merit. When a party moves for a summary judgment of the issue of liability, the non-movant is thereby placed on notice that *all* arguments and evidence opposing a finding of liability must be presented to properly resolve that issue. Whether a defense counters directly the elements of a claim or otherwise excuses liability (i.e. an affirmative defense), it must be presented and supported when the embracing issue of "liability" is considered for judgment. A summary judgment on the issue of liability encompasses all affirmative defenses and implicitly challenges the non-movant to establish a basis for finding that the defenses are both applicable and supported by the sufficient facts.[2]

■ Stop–N–Go argued that a "plaintiff must demonstrate in the motion for summary judgment that there is no material fact in issue as to the defendant's affirmative defenses and that those defenses are insufficient as a matter of law." (Defs.' Br.Supp.Mot.Recons. at 4.) A plaintiff moving for partial summary judgment on the issue of liability in a breach of contract claim *initially* must "show" only that there is no genuine issue of fact regarding the liability elements of its claim. Just as a plaintiff need not disprove an affirmative defense in the plaintiff's initial portion of presenting evidence at trial, a plaintiff/movant need not anticipate and raise the non-movant's affirmative defenses. *Harper v. Delaware Valley Broadcasters, Inc.*, 743 F.Supp. 1076, 1090 (D.Del.1990), *aff'd*, 932 F.2d 959 (3rd Cir. 1991). At any stage of a proceeding, the defendant bears the burden of raising and proving its affirmative defenses.

■ Thus, a defendant must *support* its affirmative defenses in the response to a plaintiff's motion for summary judgment. Stop–N–Go cannot shift the burden to Plaintiff both to raise and argue against Stop–N–Go's own affirmative defenses. Stop–N–Go seemed to argue that its pleaded affirmative defenses survived the judgment on liability because Plaintiff did not *argue* about the affirmative defenses in Plaintiff's Memorandum in Support of Par-

---

**2.** This conclusion is supported by the legal principle that a court cannot enter a "judgment" regarding sub-issues of liability but may enter a "judgment" regarding the complete issue of liability only. Fed.R.Civ.P. 56(c); 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, FEDERAL PRACTICE AND PROCEDURE § 2736 (1983). A court may remove "sham" or uncontested sub-issues from consideration under the authority provided by Rule 56(e); however, that was not the kind of relief requested in The Pantry's Motion.

tial Summary Judgment. As stated above, given the scope of a judgment on the issue of liability, it is illogical to imagine in what kind of legal "limbo" holds "unargued" affirmative defenses after a judgment on liability issues. This Court knows of no authority for holding that affirmative defenses are somehow latent and survive a partial summary judgment to be argued at trial—even though the complete issue of liability has been determined. Stop–N–Go ought to have raised the affirmative defenses in its Brief in Opposition to Plaintiff's Motion for Partial Summary Judgment. Stop–N–Go's failure to do this cannot work to its advantage to preserve the defenses merely because it failed to support them.[3]

## II. FINDING REGARDING AMOUNT OF BENZENE SUFFICIENT TO CONTRIBUTE TO A POLLUTED CONDITION IN VIOLATION OF IND. CODE § 13–1–3–8

 Stop–N–Go challenged the Court's finding of fact regarding the groundwater concentration of benzene sufficient to violate Ind.Admin.Code tit. 327, r. 2–1–6(a)(2) ("Rule 2–1–6(a)(2)").

There is no doubt that the purposefully unspecific narrative form of Rule 2–1–6(a)(2) was the most specific rule of law regarding groundwater concentrations of substances considered to be in violation of Ind.Code § 13–1–3–8. By its very nature, Rule 2–1–6(a)(2) required a two-stage finding of fact to determine whether a Property was in violation of that statute. First, the factfinder must determine what substances are present in what concentrations in a Property's groundwater. Second, the factfinder must determine what concentration of each of those substances is believed

to be carcinogenic in violation of Rule 2–1–6(a)(2).

After concluding that the law properly raised these two material issues of fact, the Court examined the parties' evidence to determine whether the evidence created genuine issues of fact. The only evidence in the record regarding the first necessary finding of fact was the Losack test results, which were uncontroverted and showed the presence of benzene in samples taken from each of the four Indiana properties. The only document in the record addressing the second necessary finding of fact was an EPA promulgation located in the Federal Register, National Primary Drinking Water Regulations; Volatile Synthetic Organic Chemicals, 50 Fed.Reg. 46,880 (1985).

Concluding that the EPA document met the standard under Rule 201 of the Federal Rule of Evidence, the Court took judicial notice of the document and considered it as evidence tending to establish the fact of what level of benzene is "believed" to be carcinogenic. The EPA document spoke directly of "a qualitative review of all available evidence" and determined that ingestion of *any* concentration of benzene would be carcinogenic. 50 Fed.Reg. at 46,-884, 46,888. For the purposes of the unspecific, broadly-written narrative standard provided in Rule 2–1–6(a)(2), this evidence established that any concentration of benzene in groundwater would violate that Rule. Although fully apprised that The Pantry relied on Rule 2–1–6(a)(2) and that The Pantry had submitted the Federal Register section with its Motion for Partial Summary Judgment, Stop–N–Go failed to provide *any* evidence creating a genuine issue of fact regarding the concentration of benzene "believed" to be carcinogenic.

---

**3.** Stop–N–Go's final argument merits merely a footnote response. In support of its position that Plaintiff requested judgment on a mere aspect of liability (a "partial partial" summary judgment), which position was refuted in the preceding discussion, Stop–N–Go argued in closing that Plaintiff's second Motion for Partial Summary Judgment demonstrates that Plaintiff "did not intend to move for summary judgment on all issues of liability in this case." (Defs.' Br.Supp.Mot.Recons. at 8.) Stop–N–Go is in

error. There is no rule against multiple attempts at a favorable summary judgment on different legal theories based upon the same allegations of fact. Each request for a judgment on the issue of liability requires the non-movant to assert any applicable affirmative defenses. That Stop–N–Go may now choose to raise and support its defenses in response to the Plaintiff's second Motion has no bearing on the scope and effect of the first Judgment.

Thus, Stop–N–Go failed to state any "specific facts" necessary to controvert the EPA evidence and create an issue of fact regarding what level of benzene is believed to be a carcinogen. Under the standard provided by Rule 56 of the Federal Rules of Civil Procedure, the Court found as a fact that any concentration of benzene violated Rule 2–1–6(a)(2) and Ind.Code § 13–1–3–8. (Mem.Entry Partial Summ.J. at 30.) Matching that fact against the fact of the actual benzene concentrations at the Indiana Properties, the Court found and declared that the condition of each of the four Indiana Properties violated the Environmental Warranties. Consequently, in light of the discussion in the previous section of this Entry, the Court found in The Pantry's favor on the issue of *liability* under Count I.

In the Motion to Reconsider, Stop–N–Go argued that the Court erred in finding as a fact that any concentration of benzene present at a property violated Rule 2–1–6(a)(2). None of Stop–N–Go's arguments convince the Court that the prior ruling was incorrect as a matter of law. The Court's prior decision is well supported by the applicable laws and the state of the record presented for summary judgment.

Stop–N–Go argued first that the EPA finding regarding benzene was not the kind of evidence that could more narrowly inform Rule 2–1–6(a)(2). Because the Rule uses the term "concentration," Stop–N–Go suggested that the only relevant scientific evidence is that containing actual *numbers* reflecting concentration levels. Further, Stop–N–Go pointed out that Rule 2–1–6(a)(2) requires the Court to rely on "available scientific data," which Stop–N–Go seems to assert must contain a matrix of numbers of some other such mathematics. Nonsense. The EPA document is plainly the kind of evidence providing reputable scientific data regarding the level of benzene "believed" to be carcinogenic. The document refers in summary to the literature in the field and states firmly that benzene is believed to be a carcinogen in *any* concentration.[4]

The numerical drinking water *standards* (MCL's and RMCL's)—upon which the Court did not rely—reflect considerations wholly outside the single relevant issue presented by Rule 2–1–6(a)(2). As (loosely) written, the Rule asks at what concentration benzene is believed to be a carcinogen; that question is answered directly by the EPA document—but not by the section providing the actual MCLs or RMCLs. The MCLs and RMCLs are figures that reflect a range of policy considerations apparently not considered relevant to the drafters of Rule 2–1–6(a)(2). Thus, Stop–N–Go's discussion of those figures remains inapposite.

Stop–N–Go argued that the Court should now look to the Water Pollution Control Board's 1990 standards for maximum concentration of benzene in certain water sources. This argument incorrectly implies that the Board intended the 1990 standards to apply to the condition of groundwater back in 1987. Of course, these standards were not in effect in December 1987, when the parties executed their Agreement. At that time—the relevant period within which to determine the law of the contract—the only standard was the narrative form of Rule 2–1–6(a)(2). Stop–N–Go's argument also ignores the plain fact that when the Board established the numerical guidelines for benzene in 1990, it made clear that the figures did not apply to groundwater—the kind of water at issue in this matter. Ind.Admin.Code tit. 327, r. 2–1–7; (Mem.Entry Partial Summ.J. at 27 n. 10.) Moreover, the argument would require the Court to read the guidelines into the narrative as a matter of law and not as evidence informing the question of fact. Rule 2–1–6(a)(2) was and remains in narrative form; it expressly contemplates a finding of fact and is not further limited as a matter of law.

Stop–N–Go argued strongly that the Court should not have found that any benzene presence was a violation because that would lead to an absurd result not contemplated by the governing statute. Once again, Stop–N–Go discussed how the MCLs

---

**4.** This may be represented mathematically as > 0.00.

and RMCLs for benzene were set at levels above zero; and, once again, the Court notes that Rule 2–1–6(a)(2) did not refer in any way to numerical guidelines established by the EPA or otherwise. The real "problem" with this dispute about Rule 2–1–6(a)(2) is that the Rule itself, written in a loose narrative form, allowed the kind of result present in this case. That the Rule, when applied as written, could be found to define a violation at concentrations lower than MCLs or RMCLs or current Indiana standards is neither surprising nor persuasive evidence that the Court's application of it was in error.[5]

For all these reasons, the Court maintains the prior finding of fact that any presence of benzene in groundwater violates Rule 2–1–6(a)(2) as it was written and applied in 1987. This finding proves the general rule that findings and conclusions by federal district courts are binding only on the parties to the particular decision. The Court's finding of fact was driven by the peculiar state of the record on summary judgment and plainly does not constitute a conclusion of law that Rule 2–1–6(a)(2) *requires* the finding that any concentration of benzene violates Ind.Code § 13–1–3–8. Stop–N–Go's Motion to Reconsider this finding is DENIED.

### III. FINDING OF FACT REGARDING TWO OF THE FOUR INDIANA PROPERTIES

 Stop–N–Go thirdly argued that the Court erred by finding as a fact that the Indiana Properties located at 1650 South Kentucky Avenue and 5817 Stringtown Road contained benzene in violation of the Rule 2–1–6(a)(2). Because there was no evidence of benzene actually in the *groundwater* of these two locations in the record at the time of the summary judgment, Stop–N–Go argued there was insufficient evidence from which to enter a judgment on a theory of liability purportedly requiring a presence of benzene in the groundwater. It is correct that the record contained no such evidence; however, there is undisputed evidence regarding the presence of benzene in the soil at both Properties. Thus, the proper question is whether the Properties violated the Rule if there is evidence of the presence of benzene in the soil and yet no evidence of benzene in the groundwater.

Stop–N–Go's argument that Rule 2–1–6(a)(2) requires a finding of fact that benzene was actually present in groundwater is well met. Section 13–1–3–8 and Rule 2–1–6(a)(2) do not apply to any area other than the "waters" of Indiana; they address "polluted conditions" in these "waters" only. The Pantry argued that evidence of benzene in the soil samples is sufficient because there is a potential for that substance to reach the groundwater. That view of the term "shall cause" is unreasonably broad and cannot provide a basis to support the Court's analysis of the Losack results. The Court holds that Section 13–1–3–8 and Rule 2–1–6(a)(2) require a finding of fact that the substance at issue actually be present in the "waters" of Indiana, which includes groundwater. Therefore, the Court will modify its prior Order to state that partial summary judgment on the issue of liability is entered in favor of The Pantry based on the condition of the two Indiana Properties from which groundwater samples were available at the time of the summary judgment.[6]

---

5. The whole of Stop–N–Go's arguments discloses that Stop–N–Go believes that the Court's finding was not "fair" and therefore should be amended. As discussed above, the Court properly applied Rule 2–1–6(a)(2) to the lone piece of relevant evidence in the record on summary judgment. That other evidence, if it had been made part of the record when it "should have," would have counselled a different factual finding, is not relevant. The losing party would always desire to make the record more favorable; however, the Court will not penalize The Pantry for Stop–N–Go's failure to complete its record with counter-evidence regarding the carcinogenicity of benzene. With the absence of such evidence, the language of Rule 2–1–6(a)(2) is plain and does not provide this Court authority to interpret an unprincipled "fairness" factor into the finding of fact squarely made on the evidence present.

6. The parties scuffled about recent evidence presented by The Pantry regarding one of the other two Indiana Properties. The Court will not consider this evidence in ruling upon Stop–N–Go's Motion to Reconsider. However, armed

## CONCLUSION

Contemporaneous with this Entry, the Court will enter a Modified Summary Judgment on Issue of Liability. That Order will supersede the Court's Order of October 22, 1991.

ALL OF WHICH IS ORDERED.

with a proper motion and admissible evidence, a party is free to move for a summary judgment within the broad parameters set by Rule 56(c) & (d) of the Federal Rules of Civil Procedure. A denial of summary judgment reflects merely the findings of fact and conclusions of law made under the record available at the time of motion; it does not necessarily preclude further motions upon different theories. For a discussion of the scope of judgments and findings under Rule 56(c) & (d), see 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, FEDERAL PRACTICE AND PROCEDURE §§ 2736–37 (1983).