David Wayne BURGESS, Plaintiff–Appellee, Cross–Appellant,

v.

George RYAN, Secretary of State of Illinois, and Greg O'Connor, Director of the Driver Services Department, Defendants–Appellants, Cross–Appellees.

Nos. 91–2131, 91–2870, 91–2995 and 91–3281.

United States Court of Appeals, Seventh Circuit.

Argued April 16, 1993.

Decided June 14, 1993.

Rehearing Denied July 14, 1993.

---

John H. Bisbee (argued), Macomb, IL, for David W. Burgess.

Julie D. Weisenberg, Asst. Atty. Gen., Springfield, IL, Ann Plunkett Sheldon, Mark E. Wilson (argued), Office of the Attorney General, Civil Appeals Div., Chicago, IL, for George Ryan and Greg O'Connor in Nos. 91–2131 and 91–2995.

Roland W. Burris, Office of the Attorney General, Chicago, IL, Julie D. Weisenberg, Asst. Atty. Gen., Springfield, IL, Jan E. Hughes, Asst. Atty. Gen., Mark E. Wilson (argued), Office of the Attorney General, Civil Appeals Div., Chicago, IL, for George Ryan in Nos. 91–3281 and 91–2870.

Julie D. Weisenberg, Asst. Atty. Gen., Springfield, IL, Jan E. Hughes, Asst. Atty. Gen., Mark E. Wilson, Office of the Attorney General, Civil Appeals Div., Chicago, IL, for Greg O'Connor in Nos. 91–3281 and 91–2870.

Before COFFEY, EASTERBROOK, and ROVNER, Circuit Judges.

EASTERBROOK, Circuit Judge.

Drivers who violate traffic laws frequently, or commit a single serious infraction, lose their licenses in Illinois. Three convictions within a year for speeding, or one for driving under the influence of alcohol, produce automatic revocation. 625 Ill.Comp.Stat. 5/6–205(a); 92 Ill.Admin.Code § 1040.38(a). A driver who believes that state officials erred in determining the number or gravity of his offenses is entitled to a hearing, but only after the revocation has taken effect. 625 Ill.Comp.Stat. 5/2–118, 2–118.1. Such a driver may seek an interim permit, readily available to persons whose employment requires an ability to drive and who have not previously been convicted of driving under the influence of alcohol or other drugs. 625 Ill. Comp.Stat. 5/6–205(c), 6–206.1(a). In 1976 a district court held that the Illinois scheme offends the due process clause of the Constitution because the hearing comes after rather than before the revocation. The Supreme Court reversed, concluding that a subsequent hearing suffices. *Dixon v. Love*, 431 U.S. 105, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977). See also *Mackey v. Montrym*, 443 U.S. 1, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979). Fourteen years later, in this case, a district court held

that the Illinois scheme offends the due process clause of the Constitution because the hearing comes after rather than before the revocation.

The only difference is the location of the traffic offense. Love was convicted in Illinois, David Wayne Burgess in Colorado. Arrested while driving 61 M.P.H. in a 35 M.P.H. zone, and charged with speeding, driving under the influence of alcohol (DUI), and driving while ability impaired (DWAI), a lesser degree of impairment. Colo.Rev.Stat. § 42–4–1202(1)(b). Burgess pleaded guilty to the DWAI charge, and the other two were dismissed as part of the plea bargain. This conviction would not have cost Burgess his right to drive had he possessed a Colorado license. Colo.Rev.Stat. § 42–2–123(5)(b)(III). But his license had been issued by Illinois, which does not recognize degrees of impairment. Under the Interstate Driver License Compact, Colorado reported the conviction to Illinois, which revoked Burgess' license. The notice informing Burgess of this action stated that the justification was a conviction for "DUI/Alcohol" in Colorado. The Compact requires each state to give a conviction in another state "the same effect ... as it would [have had] if such conduct had occurred in the home state". 625 Ill.Comp.Stat. 5/6–703(a). See also 625 Ill.Comp.Stat. 5/6–206(a)(6). The administrative apparatus of Illinois has concluded that the Colorado offense of driving while ability impaired is most like the Illinois offense of driving under the influence of alcohol, and a state court has agreed. *Mills v. Edgar*, 178 Ill.App.3d 1054, 128 Ill. Dec. 167, 534 N.E.2d 187 (4th Dist.1989). If *Mills* is correct, then the Secretary of State does not possess any discretion in a case such as Burgess'; conviction of driving while ability impaired in Colorado leads straight to revocation in Illinois.

Instead of seeking a post-revocation administrative hearing, requesting a temporary permit, or asking a state court to take a fresh look at the equivalence of Colorado and Illinois offenses, Burgess filed this suit under 42 U.S.C. § 1983. According to Burgess, Illinois' action violated seven provisions of

the Constitution, from the double jeopardy clause to the full faith and credit clause. Both sides must have been astonished when the district judge entered an injunction barring enforcement of the statute, and requiring Illinois to restore Burgess' driving privileges, for a reason that Burgess had not advanced: that Illinois' system violates the due process clause of the fourteenth amendment because the hearing comes after rather than before a revocation or suspension.

■ The district court treated *Dixon* as if it required a case-by-case inquiry into the weight of the interests involved and the utility of a hearing. The court believed that Burgess' interest as a chauffeur is especially weighty and that the risk of error in establishing a correspondence between one state's rules and another's is especially high, leading to the conclusion that a hearing should precede the administrative decision. But *Dixon* vindicated the constitutionality of Illinois' statutory system, not simply of its application to a particular driver. *Dixon* employed the method of *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), which remarked: "[P]rocedural due process rules are shaped by the risk of error inherent in the truth-finding process as applied to the generality of cases, not the rare exceptions." *Id.* at 344, 96 S.Ct. at 907. Person-specific variations do not cause an otherwise-proper system of procedure to violate the Constitution. And at all events the considerations that the district court emphasized, such as Burgess' need to drive in order to remain employed, hardly distinguish *Dixon.* Love was a truck driver! 431 U.S. at 110, 97 S.Ct. at 1726. The Court wrote:

> The Illinois statute includes special provisions for hardship and for holders of commercial licenses, who are those most likely to be affected by the deprival of driving privileges.... We therefore conclude that the nature of the private interest here is not so great as to require us "to depart from the ordinary principle ... that something less than an evidentiary hearing is sufficient prior to adverse administrative action."

431 U.S. at 113, 97 S.Ct. at 1728, quoting from *Eldridge,* 424 U.S. at 343, 96 S.Ct. at

907. The Court added that the risk of error is low because the process is mechanical—not zero, because reports of convictions may be erroneous or may be misinterpreted, but low. So here. The risk is low—not zero, because *Mills* may be wrong, but low. A system offering prior hearings in every case on account of the risk of error in a few cases would reduce safety, the Court thought, by permitting dangerous drivers to remain on the road and encouraging them to bog down the system by flooding it with requests for hearings. 431 U.S. at 114, 97 S.Ct. at 1728. That observation is no less true today than it was when the Supreme Court wrote; the Illinois system is no less constitutional today than it was in 1977.

Thus we arrive at a sticking point. What becomes of the arguments Burgess actually made? After the district court issued a preliminary injunction, Burgess asked the court to make the relief permanent, reiterating the seven constitutional theories originally adduced. The district court wrote an opinion rejecting Burgess' contentions. That left the court's own due process theory as the sole support for declaratory and injunctive relief. Instead of entering an appropriate declaratory judgment or injunction, however, the court filed a judgment that reads in full:

> IT IS ORDERED AND ADJUDGED judgment is entered in favor of the Defendants and against the Plaintiff on the privileges and immunities claim, the equal protection claim, and the double jeopardy claim. Further ordered that judgment is entered in favor of the Plaintiff and against the Defendants on the due process claim.

No declaratory judgment, no injunction appropriate under Fed.R.Civ.P. 65(d). Both sides appealed from this document, and the defendants appealed from a later order awarding attorneys' fees to Burgess under 42 U.S.C. § 1988. Add the defendants' appeal from the preliminary injunction, and we have four appeals.

■ Just as every state must adhere to constitutionally mandatory procedures, every judge must adhere to the procedures established by federal rules and statutes. Rule 65(d) instructs judges to specify precisely what they require of the litigants. "[J]udg-

ment is entered in favor of the Plaintiff and against the Defendants on the due process claim" is less useful even than the judgment held inadequate in *Schmidt v. Lessard,* 414 U.S. 473, 94 S.Ct. 713, 38 L.Ed.2d 661 (1974). "[T]he specificity provisions of Rule 65(d) are no mere technical requirements. The Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Id.* at 476, 94 S.Ct. at 715. Even declaratory judgments, which are not enforced by contempt, must be spelled out so that the parties may know their rights. *Azeez v. Fairman,* 795 F.2d 1296 (7th Cir.1986); *Foremost Sales Promotions, Inc. v. Director, BATF,* 812 F.2d 1044 (7th Cir.1987). Precision is especially important here, for Burgess' different theories carry different implications. The double jeopardy theory, for example, implies that the state's entire system of revoking licenses for traffic convictions is unconstitutional because loss of one's license is a forbidden additional penalty for crime, while the full faith and credit theory implies only that Illinois must give the Colorado judgment the same effect that Colorado would give it. The "due process claim" to which the court referred could mean anything; Burgess invoked the due process clause, although not to the same end as the district judge.

■ *Schmidt* holds that inadequate specificity in an injunction does not scuttle appellate jurisdiction. See also *Alpine State Bank v. Ohio Casualty Insurance Co.,* 941 F.2d 554 (7th Cir.1991). Cf. *Bates v. Johnson,* 901 F.2d 1424 (7th Cir.1990) (oral judicial demand, unaccompanied by any written order, is neither enforceable nor appealable). But *Schmidt* declined to address the merits of the case, remanding so that the district court could comply with Rule 65(d). See also *Azeez,* holding that failure to enter a declaratory judgment is the same as denying the request for one. Remanding after the fashion of *Schmidt* would unduly prolong this case, which began early in 1991. A more palatable alternative is to treat Burgess' current contentions as arguments in support of the preliminary injunction, which complies with Rule 65(d) and over which we have

jurisdiction by virtue of the defendants' appeal No. 91–2131. An appeal from a preliminary injunction usually becomes moot once the district court grants or denies permanent relief, but the district judge has yet to displace the preliminary injunction with a proper permanent injunction. The preliminary injunction remains the only statement of what the district judge expects the defendants to do. We conclude, therefore, that the preliminary injunction remains in force. Whether it should endure depends on the validity of Burgess' arguments.

■ Behind many of Burgess' arguments lies a conclusion that employees of Illinois misunderstand Illinois law. Burgess believes that the Illinois offense of driving under the influence of alcohol is not equivalent to the Colorado offense of driving while ability impaired. Yet it is not appropriate for a federal court, hearing a case under § 1983, to upbraid state officials for a supposed error of state law. *Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 106, 104 S.Ct. 900, 911, 79 L.Ed.2d 67 (1984). Burgess was free to take his contentions to state court (although presumably he would want to avoid the fourth appellate district, which in *Mills* agreed with the Secretary of State's interpretation). A federal judge, by contrast, must assume that the state officials' interpretation is right—not necessarily because it *is* correct (the Supreme Court of Illinois might disagree with *Mills*) but because errors in the interpretation of state law do not supply a basis for federal relief. Constitutional adjudication tests the *power* of a state to act in a particular way; whether the state indeed wishes to act in that way is a question of its domestic law. The Constitution does not require states to administer their laws correctly. *DeShaney v. Winnebago County Department of Social Services,* 489 U.S. 189, 202, 109 S.Ct. 998, 1006, 103 L.Ed.2d 249 (1989); *Nordlinger v. Hahn,* —— U.S. ——, —— n. 8, 112 S.Ct. 2326, 2335 n. 8, 120 L.Ed.2d 1 (1992); *id.* at —— – ——, 112 S.Ct. at 2339–41 (Thomas, J., concurring); *Archie v. Racine,* 847 F.2d 1211, 1215–18 (7th Cir.1988) (in banc); *Saukstelis v. Chicago,* 932 F.2d 1171 (7th Cir.1991). Blunders in the imple-

mentation of state law are inevitable; state courts provide the remedy. See *Easter House v. Felder*, 910 F.2d 1387 (7th Cir.1990) (in banc); *Pacelli v. deVito*, 972 F.2d 871 (7th Cir.1992). To receive relief for an error of state law, a party must make a claim under the state law itself, as in diversity litigation. But Burgess and the defendants are not of diverse citizenship, and an exercise of supplemental jurisdiction under 28 U.S.C. § 1367 would be inappropriate. Burgess should have taken his grievance to state court, where all problems could have been ironed out long ago.

▆▆▆ To prevail under § 1983 Burgess must show that Illinois' system is unconstitutional even when properly carried out. Yet on this approach his arguments are insubstantial. Burgess has abandoned most of them (his brief does not mention the double jeopardy or full faith and credit clauses, for example). At oral argument his lawyer conceded that a state law expressly providing for revocation of the license of anyone convicted of any motor-vehicle drug or alcohol offense would satisfy the Constitution as he understands it. Burgess denies that Illinois has such a law, but the denial depends on his disagreement with *Mills*. If that case is correct, then the Illinois statutory scheme has exactly the structure Burgess says is sufficient, although it lacks the degree of clarity Burgess prefers. Recasting the argument as one about the adequacy of notice—Colorado did not tell Burgess what would happen to his Illinois license, and Illinois did not brief its drivers on the risks of violating other states' laws—adds nothing. Criminal charges need not detail the civil consequences of convictions, and statutes do not become unconstitutionally vague just because they require judicial interpretation. That the details for matching the two states' offenses appear in the law reports rather than the statute books is constitutionally irrelevant. *Rose v. Locke*, 423 U.S. 48, 96 S.Ct. 243, 46 L.Ed.2d 185 (1975).

▆▆▆ Only a few words are necessary to mop up the remaining arguments. Burgess contends that Illinois violates the equal protection clause of the fourteenth amendment, and the privileges and immunities clause of Art. IV § 2, by permitting persons holding Colorado drivers' licenses to use its streets, although he cannot. Colorado does not revoke the licenses of persons convicted of driving while ability impaired; Illinois does. But what has this to do with equal protection? Illinois has not drawn any irrational classification; it has a uniform response to convictions for driving under the influence of alcohol, a response that disregards the location of the offense. That is the point of § 6–703: one rule applies to all holders of Illinois licenses, no matter the jurisdiction of conviction. Burgess appears to believe that under the Constitution all states must employ the same rules. If Colorado believes that a person convicted of driving while ability impaired is still fit to hold a license, Illinois must follow the same rule. At oral argument counsel referred to states' disparate reactions to driving under the influence of alcohol as "the federalism problem." He was unfazed by the court's reminder that federalism is not a "problem" but a feature of the national confederation. Freedom to move from one state to another in search of a preferable legal system—to use exit as well as voice—is an important element of liberty and source of pressure on government to improve the law. Burgess, a citizen of Illinois, may not insist that Illinois give him a license to drive just because Colorado, or Alaska, or any other state would do so. As for the privileges and immunities clause: there might be a problem if Illinois refused to permit holders of Colorado licenses to use the roads of Illinois, cf. *Supreme Court of Virginia v. Friedman*, 487 U.S. 59, 108 S.Ct. 2260, 101 L.Ed.2d 56 (1988), but this part of the Constitution does not require homogeneous state laws. It curtails states' ability to discriminate against non-citizens, but Illinois has not discriminated against citizens of Colorado (of whom Burgess is not one, anyway). Virginia was free after *Friedman* to establish qualifications for membership in the Virginia Bar; Illinois is free to establish its own qualifications for driving, and these need not match Colorado's.

The preliminary injunction is reversed, and the case is remanded with instructions to enter judgment for the defendants. Because

Burgess is no longer the prevailing party, the award of attorneys' fees, the subject of appeal No. 91–3281, is no longer appropriate and is reversed.