James J. BOCZAR and Linda Morrison Boczar, Plaintiffs–Appellants,

v.

David KINGEN, et al., Defendants–Appellees.

Nos. 00–1907, 00–3259.

United States Court of Appeals, Seventh Circuit.

Submitted April 30, 2001.*

Decided May 1, 2001.

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a).

Before Hon. MICHAEL S. KANNE, Hon. ILANA DIAMOND ROVNER, Hon. ANN CLAIRE WILLIAMS, Circuit Judges.

## ORDER

Dr. Linda Boczar, who owns a residence with her husband James Boczar in the North Meridian Street historic district in Indianapolis, Indiana, sued City of Indianapolis officials ("the City"), primarily alleging that the City's issuance of a stop-work order and revocation of a construction permit for renovations on the Boczars'

home violated state law, the due process provisions of the Indiana and United States Constitutions, as well as the Takings Clauses of the Indiana and United States Constitutions. Dr. Boczar also sued the Meridian Street Preservation Commission ("MSPC") and several of its officers, alleging mainly that the MSPC's refusal to approve the Boczars' renovation plans and the Indiana statute governing the MSPC violated due process. Mr. Boczar joined the suit as a plaintiff and the Boczars (who at this point were representing themselves) requested a preliminary injunction, which the district court denied. Subsequently, the district court dismissed all claims against MSPC officials in their official capacity, and all damages claims against MSPC officials in their individual capacity. After holding a bench trial on the remaining claims, the district court entered judgment against the Boczars. The Boczars now appeal pro se and we affirm.

## Background

In 1996, Dr. Boczar[1] purchased a ranch style home in the North Meridian Street historic district, which is located within the MSPC's jurisdiction. Soon afterwards, she decided to renovate the home and thus applied to the MSPC for a "Certificate of Appropriateness," which is required under state law before any renovation to a home in the MSPC's district may take place, see IND. CODE § 36–7–11.2–61. As required, she included in her application diagrams of the proposed renovation design drafted by an architect whom she had hired, as well as written design and construction specifications of the plan. In general, those plans called for a new "French Eclectic" facade (the addition to be in limestone and cement

plaster with new limestone to resemble the current lower house facade), the addition of a second floor, a three-car detached garage, a front-entry turret vestibule and rear-entry mud room/breezeway, installation of all new windows, and trim features in gray and iron work around the windows, doors, and wall edges. The MSPC approved this design in 1997 and issued a Certificate of Appropriateness. Included in the order granting the Certificate is the requirement that "improvements shall be per plans on file with the Commission."

When Dr. Boczar invited bids from construction companies to build the architect's 1997 proposed design, the projected costs turned out to be much higher, indeed more than double, than the amount she had told the architect she was willing to pay. She decided not to implement the architect's plans. Instead, around April 1998, she hired a contractor to conceive of a new renovation design that would cost no more than $200,000 to execute. After completing the plans and drafting diagrams of the new design, the contractor requested a city building permit from Indianapolis's Department of Metropolitan Development ("DMD"), and submitted his design plans to the DMD. These designs differed from the 1997 plans in that they showed an attached garage with living space over the garage, a porte chochere feature attaching the garage to the residence, different window styles, and no trim features around the windows, doors and wall edges.

Under state law, the DMD "may not issue a permit for the construction, reconstruction, alteration, or demolition of a structure in the areas unless the application for the permit is accompanied by a certificate of appropriateness," IND. CODE § 36–7–11.2–61(c). But when asked by the

---

1. Dr. Boczar was the sole titleholder of the property until just before the preliminary injunction hearing, when she issued a deed for the property to her husband and herself. At that point, Mr. Boczar was permitted to join the litigation as a plaintiff.

City about the MSPC's view of the design, the contractor submitted the Certificate of Appropriateness that Dr. Boczar had obtained for the 1997 plans. Dr. Boczar admitted that she did not seek either an amendment or new approval from the MSPC for the revised designs before seeking a city building permit, and that it was her idea to submit the new plans to the DMD. She explained that although she was aware that the new designs were different from the 1997 plans, she did not believe the changes to be significant.

The DMD issued the building permit and, in September 1998 the contractor began working on the renovation. Nevertheless, neighbors of the Boczars complained to the MSPC about differences between the plan that the MSPC approved in 1997 and the renovations under construction. At a subsequent MSPC meeting (at which the issue of the Boczar home was not formally on the agenda), the MSPC voted to "promote the case" to the DMD. The MSPC in turn sent correspondence to the DMD regarding its concerns about the renovation's compliance with the 1997 Certificate of Appropriateness. On November 13, 1998, the City issued a stop-work order, and on November 23, 1998, the City revoked the building permits. In a revocation letter issued to the Boczars, the City explained that the plans submitted to the DMD to obtain the building permits substantially differed from the plans approved by the MSPC in 1997. Furthermore, the City explained, "[i]n order for [the DMD] to reinstate the permits, you will need to obtain approval from the [MSPC] of revised plans that conform to the work being done on your property." The City, however, allowed the Boczars to finish the roof on the property and otherwise make the house watertight despite the unfinished construction.

In December 1998 Mr. Boczar appeared before the MSPC to ask for an amendment to the 1997 Certificate of Appropriateness. The MSPC did not consider the issue at that time, however, because it believed it needed more information to make a decision. The meeting was continued to January 1999, at which time the MSPC took no action on the requested amendment to the Certificate, again citing insufficient information. Then in February 1999, Mr. Boczar met with an MSPC member named David Halvorson to review the proposed renovation plans. During that meeting, Halvorson provided Mr. Boczar with a list specifying the MSPC's concerns about the appropriateness of the renovation plans. These reasons included concerns that the aesthetics and location of the proposed garage were problematic, that the designs showed unaesthetic use of mixed materials in the "primary facades," that the house needed a stronger vertical design consistent with the French Eclectic style, that windows on one side of the house did not match the windows on the other side of the house, and that the MSPC needed more information about landscaping, facade materials, and length and composition of a proposed fence.

The MSPC met formally again in May 1999 and addressed the Boczars' application for an amendment to their 1997 Certificate of Appropriateness. The MSPC denied the amendment and, in an order dated May 25, told the Boczars that they should apply for a new Certificate of Appropriateness based on the revised plans. Also in the order, the MSPC stated that the new plans "are not appropriate to the preservation of the area comprised of Meridian Street and bordering properties or non-complying with the architectural and construction standards in said area."

*Analysis*

On appeal, the Boczars primarily challenge the district court's decision that the

statute governing the MSPC is not unconstitutionally vague, either facially or as applied to the Boczars. The Boczars also contest the district court's disposition of their other due process claims and takings challenges, as well as several of the district court's factual findings. Furthermore, Dr. Boczar argues that the district court erred in (1) denying the Boczars's request for a preliminary injunction, (2) concluding that the City's issuance of the stop-work order and revocation of the building permits were unauthorized by Indianapolis municipal law, (3) dismissing her claims against the MSPC defendants in their official capacity, and (4) dismissing her federal damages claims against the MSPC defendants in their individual capacity.

1. The Boczars's challenge to the MSPC governing statute as unconstitutionally void for vagueness on its face.

A law is impermissibly void for vagueness if the law "contains terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application." *Gresham v. Peterson,* 225 F.3d 899, 907 (7th Cir.2000) (citation and internal quotations omitted). Moreover, a law is unconstitutionally void for vagueness on its face only if it is vague "not in the sense that it [establishes] an imprecise but comprehensible normative standard, but rather in the sense that no standard ... is specified at all." *Record Head Corp. v. Sachen,* 682 F.2d 672, 676 (7th Cir.1982) (quoting *Coates v. City of Cincinnati,* 402 U.S. 611, 614, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971)). The Boczars believe that the statute governing the standards that the MSPC examines when deciding whether to issue a Certificate of Appropriateness, IND. CODE § 36–11.2–59 to 61, is unconstitutionally vague on its face. They contend that the statute violates due process because it does not give homeowners adequate notice of what they may and may not do with their property.

The district court, in a lengthy and thorough examination of this question, concluded that the terms of the MSPC statute were not so vague as to be misunderstood by persons of ordinary intelligence and that they did not create an ambiguity where none existed. First, the district court examined some of the more general or imprecise words in the statute, including the statute's prohibition against structures that are of "substantially greater density," or "substantially smaller or larger in size and scale" than other homes in the neighborhood, and the statute's preclusion against set-backs that are "significantly less" than other properties or that "substantially encroach upon the view and exposure" of other neighborhood homes. Using canons of statutory interpretation, the court concluded that these words were not so unclear as to specify no standard at all. Next, the district court also determined that the following provision challenged by the Boczars was not facially void:

> In determining appropriateness, the commission shall consider, in addition to other factors that the commission considers pertinent, the historical and architectural style, general design, arrangement, size, texture, and materials of the proposed work and the relation of the proposed work to the architectural factor of other structures in the area.

IND. CODE § 36–7–11.2–61(c). In concluding that this language was not unconstitutionally vague, the court cited 13 cases from other jurisdictions in which courts upheld historic preservation laws using similar language. The court acknowledged that the phrase "other factors that the commission considers pertinent" could be considered vague. Nevertheless, the court decided that if the statute were read

as a whole, with its overriding purpose kept in mind, and the provision's list of specific factors understood to limit discretion, "the ['other factors'] phrase should be construed so as to further the purpose of the [MSPC]," which is "to preserve a historic, scenic, esthetically pleasing and unique area from deterioration and improper change and to promote orderly and proper land usage." Entry at 39–40. Finally, the court rejected the Boczars' contentions that the law is necessarily vague due to lack of substantive regulations defining the terms in the statute and/or questionable evidence of arbitrary and capricious enforcement of the statute's requirements.

■ On appeal, the Boczars generally reiterate the arguments they made in the district court, namely that the MSPC's failure to enact substantive regulations defining the terms in the MSPC statute,[2] and evidence of the MSPC's disparate treatment of other neighbors demonstrate the statute's vagueness. The Boczars also attempt to distinguish some of the cases cited by the district court in which similar language was held not to be unconstitutionally vague. To further challenge the district court's analysis, Dr. Boczar cites

other cases in which allegedly similarly-worded historic preservation laws were held not to be unconstitutionally vague. Nothing the Boczars have argued in this appeal, however, persuades us to disagree with the district court's ultimate conclusion that the statute is not so imprecise as to provide no readily ascertainable standard. Accordingly, we affirm the district court's disposition of this issue for substantially the reasons stated by the district court.

2. Dr. Boczars's arguments that the City's stop-work order and permit revocation was unauthorized and violated due process.

To demonstrate a valid due process claim, a plaintiff must establish a "protected liberty or property interest." *Brokaw v. Mercer County*, 235 F.3d 1000, 1020 (7th Cir.2000). In denying the Boczars' claim that the City violated due process by revoking their building permit, the district court found that Dr. Boczar obtained the building permits by misrepresenting that the Certificate of Appropriateness supported the revised plans she actually submitted. The court reasoned that the permit was obtained in violation of IND.

---

2. The Bozcars make much of language in Judge Tinder's opinion in *The Pantry, Inc. v. Stop–N–Go Foods, Inc.*, 777 F.Supp. 713, 730 (S.D.Ind.1991), *opinion modified on other grounds by* 796 F.Supp. 1164 (1992), a case regarding the Kentucky state environmental administration's failure to specify what substances the administration deems to be "hazardous" under its governing statute. The Boczars argue that language in *The Pantry* demonstrates that Judge Tinder has been inconsistent in his holdings about whether an agency is required to adopt substantive regulations defining terms in their governing statutes. Unlike the case at hand, however, the Kentucky statute at issue in *The Pantry* mandated that the administrative body designate substantive requirements. *Id.* Accordingly, the district court concluded that "[w]hen a statute provides a vague, broad

definition of a term and then specifically provides than an administrative body *shall* 'promulgate regulations designating the [items] subject to the [statute],' the administrative body must promulgate the required regulations for the statute to have effect." *Id.* (emphasis in original). In this case, the Indiana statute governing the MSPC does not mandate that the MSPC promulgate substantive regulations defining the terms in the statute, and requires only that the MSPC "shall" adopt rules and regulations "necessary, desirable, or convenient to the orderly administration of commission affairs and to the implementation of [the MSPC governing statute]," IND. CODE § 36–7–11.2–27. In accord with this mandate, the MSPC has adopted procedural rules governing the administration of approving renovation proposals.

CODE § 36–7–11.2–61(c), which requires that all building permit applications be accompanied by a Certificate of Appropriateness from the MSPC. The district court concluded that because the City issued the permits based on a "mistake of fact and in violation of the ordinance requiring the MSPC's approval ... the permits did not create a protectible property interest." Entry at 52 (citing *Bone v. City of Lafayette*, 919 F.2d 64, 65 (7th Cir.1990)).

■ Dr. Boczar does not contest the district court's conclusion that a building permit obtained in violation of law is not a protected property interest. Rather, she challenges the district court's factual finding that she misrepresented her building permit application by using the 1997 Certificate of Appropriateness to obtain City approval of the revised plans. We review a district court's findings after a civil bench trial for clear error, *Estate of Kunze v. Commissioner of Internal Revenue*, 233 F.3d 948, 950 (7th Cir.2000), and "will not find a district court's factual finding clearly erroneous if it is plausible in light of the record viewed in its entirety," *United Air Lines, Inc. v. International Ass'n of Machinist and Aerospace Workers*, 243 F.3d 349, 361 (7th Cir.2001) (citation and internal quotations omitted). With this standard in mind, we do not believe that the district court clearly erred in finding that Dr. Boczar misrepresented the contents of her application for a building permit. Significantly, Dr. Boczar admitted that the plans she submitted to the DMD were different from the plans that the MSPC approved, and that she gave the contractor the Certificate of Appropriateness when the City requested it from him. Although she did not believe these differences to be significant, she has given us no reason to disturb the district court's factual determination that the two plans differed considerably. She claims that her submitted plans

showed a house of about the same size with the same general floor plan, and therefore the plans complied with the earlier plans that the MSPC had originally approved. Despite Dr. Boczar's protestations, we cannot say that the district court's clearly erred in finding the new plans differed greatly from the 1997 plans in terms of the general facade, porch addition, attached garage, porte cochere, and absence of trim features.

■ Dr. Boczar also argues that the district court erred in concluding that the City was authorized pursuant to municipal law to enforce a stop-work order and revoke her building permits based on the fact that she did not have a Certificate of Appropriateness for the revised plans. This contention is meritless. Under Indianapolis's Revised Code, the City is authorized to "[e]nforce provisions of state law or city ordinance relating to the development, condition, maintenance or use of real estate." INDIANAPOLIS, IND., REV. CODE § 231–306(b)(4) (1998). Furthermore, the City may issue stop-work orders if construction is proceeding in violation of the "building standards and procedures." INDIANAPOLIS, IND., REV. CODE § 536–705(2) (1998). The municipal code defines "building standards and procedures" as "the regulations, standards or requirements relative to ... construction activity ... established by or under federal law, state law or city ordinances." INDIANAPOLIS, IND., REV. CODE § 536–111(b)(1998). When the stop-work order was issued, the Boczars were violating Indiana state law by renovating their home without a valid Certificate of Appropriateness in support of their planned renovation, *see* § 36–7–11.2–61(c) (the City "may not issue a permit for the construction, reconstruction, alteration, or demolition of a structure in the area unless the application for the permit is accompanied by a certificate of appropriateness"),

and therefore were violating building standards and procedures when the stop-work order was issued. Likewise, under the Revised Code the City may revoke a building permit if the "application, plans or supporting documents contain a false statement or misrepresentation of material fact." INDIANAPOLIS, IND., REV. CODE § 536–704(1) (1998). This portion of the municipal code clearly authorized the City to revoke the permit based on Dr. Boczar's misrepresentation about the Certificate of Appropriateness.

3. The Boczars's other arguments on appeal

■ Dr. Boczar devotes a substantial portion of her brief to contesting the district court's denial of the Boczars' request for a preliminary injunction. But because the district court has entered final judgment on the merits of the case, any arguments on appeal relating to the decision to deny the preliminary injunction are moot. *See Burgess v. Ryan,* 996 F.2d 180, 184 (7th Cir.1993) (recognizing that "once the district court grants or denies permanent relief" arguments on appeal regarding a preliminary injunction generally become moot).

With regard to the Boczars' claims under the Indiana Constitution, the City and the MSPC argue that by not mentioning the Indiana Constitution during their appeal, the Boczars have waived any challenge to the district court's dismissal of these issues. But the City and the MSPC overlook Dr. Boczar's discussion of the Indiana Constitution in her argument contesting the district court's resolution of an apparent inconsistency amongst federal district courts in Indiana regarding whether an implied cause of action for damages exists for state constitutional violations. She also argues her state constitutional claims when she challenges the district

court's determination that the Boczars could not claim damages under the Indiana Constitution because the individual members of the MSPC were entitled to absolute judicial immunity.

■ Despite Dr. Boczar's above arguments regarding her state constitutional claims, however, we believe that the Boczars waived any challenge to the district court's judgment on their Indiana due process claims for damages and equitable relief. Specifically, the Boczars do not dispute the district court's conclusion that they failed to identify a property interest protected by the Indiana Constitution's due process provision. Regardless of whether the Boczars may sue for damages for state constitutional violations, under Indiana law they are not entitled to any relief under the state's due process provision unless they have demonstrated a protected property interest at stake. *See Indiana High School Athletic Ass'n, Inc. v. Carlberg,* 694 N.E.2d 222, 241 (Ind. 1998). And although Dr. Boczar contends in her reply brief that she did not waive challenging the district court's disposition of her state constitutional claims, she offers no relevant argument or legal authority supporting this contention, *see Nutra-Sweet, Co. v. X–L Eng'g Co.,* 227 F.3d 776, 787 (2000); *see also Anderson v. Hardman,* 241 F.3d 544, 545 (7th Cir.2001).

■ Similarly, the Boczars also waived any arguments relating to the Fifth Amendment's Takings Clause, substantive due process, and that the MSPC's denial of an amendment to their 1997 Certificate of Appropriateness violated procedural due process as applied. The Boczars do not cite any legal authority in support of their assertions that the district court erred in deciding these claims, and it is well established that even pro se litigants must provide citations to the law in support of their contentions, *see* Fed. R.App. P. 28(a)(9)(A);

*Anderson,* 241 F.3d at 545; *Mathis v. New York Life Ins. Co.,* 133 F.3d 546, 548 (7th Cir.1998). Dr. Boczar for the same reason has waived her unsupported arguments that the district court erred in dismissing her federal claims against MSPC members in their official capacities and her claims for damages against MSPC members in their individual capacities.

Finally, the Boczars point to several findings of fact in the district court's March 9 order that they believe are clearly erroneous.[3] We believe only a few of these factual disputes are relevant enough to the issues in this appeal to warrant discussion. The Boczars first contend that the district court mischaracterized the events that occurred at the May 18, 1999 meeting and that, in any event, the events at the May 18, 1999 meeting are beyond the scope of the record. Although we are unsure of the import of the May 18, 1999 meeting to their arguments on appeal, their claim that the district court should not have examined any events that occurred after they filed their complaint on January 28, 1999 is completely unsupported by authority and belied by the fact that the Boczars themselves submitted the transcript from the May 18 meeting into the record. Further, the Boczars' contention that the district court mischaracterized the events and consequences of the May 18 hearing lacks merit. The Boczars believe that at the meeting, the MSPC did not vote to deny their petition to amend the Certificate, and instead merely decided not to hear it the issue. But the transcript from the hearing shows that the MSPC voted on a motion that the Boczars' "original Certificate of Appropriateness that was

granted stay in place for the original plans, and if there is a variance from those plans then a new application needs to be submitted." Plaintiffs' Exhibit 2 at 21. Because we can infer from this language that the MSPC was denying their application for an amendment, we do not believe that the district court's interpretation of this motion is clearly erroneous.

The Boczars also believe that the district court incorrectly found that the MSPC's actions with respect to two of the Boczars' neighbors did not demonstrate that the Boczars were arbitrarily singled out when they unsuccessfully applied for an amendment to their 1997 Certificate. The district court concluded that although the MSPC approved changes in the neighbors' property, the neighbors were not requesting alterations of the same magnitude as the Boczars' revised renovation plans. The Boczars, on the other hand, believe that a neighbor's paving of a gravel walkway and another neighbor's addition of fourteen-and-a-half feet to a garage (when the MSPC originally approved a ten feet addition) were significant changes on par with the Boczars'. But the Boczars misunderstand the nature of the clearly erroneous standard of review. When we review a district court's findings of fact, we do not ask whether there is another conclusion possible based on the evidence; rather, the inquiry is whether the finding is "plausible in light of the record in its entirety." *United Air Lines,* 243 F.3d at 361 (citation and internal quotations omitted). Accordingly, we believe the district court's finding that the neighbors' proposed changes were insignificant in comparison to the Boczars'

**3.** Dr. Boczar additionally argues that the district court had no basis for implying in its order denying the preliminary injunction motion that the Boczars committed fraud in obtaining a construction permit from the City. But, as we stated earlier, all appellate arguments relating to the preliminary injunction motion are now moot based on the district court's decision on the merits, *see Burgess v. Ryan,* 996 F.2d 180, 184 (7th Cir.1993), and we need not address this contention.

renovation plans could reasonably be inferred from the fact that the Boczars were seeking to change the entire facade of their home, while the other two neighbors simply requested changes to one aspect of their property.

For the foregoing reasons we AFFIRM the district court's judgment.