Roger McCONNELL, Plaintiff,

v.

Matt McKILLIP, Phillip P. Williams, Jefferey S. Rudoph, Jack W. Dodd, Roger Phillips, Heath Haalek, Shawn J. Haus, Defendants.

Roger McConnell, Plaintiff,

v.

Matt McKillip, Individually and as Mayor of the City of Kokomo; Phillip P. Williams, Jeffery S. Rudolph and Jack W. Dodd, Each Individually and as Members of the Board of Public Works and Safety of the City of Kokomo; K.P.D. Officer Roger Phillips Badge # 301, K.P.D. Officer Heath Haalek Badge # 286, and K.P.D. Officer Shawn L. Haus Badge # 283, Each Individually and as Employees of the City of Kokomo, Defendants.

No. 1:06–cv–00769–LJM–TAB.

United States District Court,
S.D. Indiana,
Indianapolis Division.

July 30, 2008.

Dan J. May, May Law Office, Kokomo, IN, for Plaintiff.

Andrew P. Wirick, Christopher Douglas Cody, Hume Smith Geddes Green & Simmons, Indianapolis, IN, for Defendants.

## *ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*

LARRY J. McKINNEY, District Judge.

This cause is before the Court on Defendants' Motion for Summary Judgment (Docket No. 31). Plaintiff, Roger McConnell ("McConnell"), initiated this lawsuit seeking relief pursuant to 42 U.S.C. § 1983 and state law for, among other things, unlawful search and seizure of his property, battery, wrongful arrest, false imprisonment, and trespass. He has sued the defendants, who are all former or current City of Kokomo ("City") officials, in their individual and official capacities. The instant motion has been fully briefed and is now ripe for ruling.

For the reasons stated herein, Defendants' motion is **GRANTED in part and DENIED in part.**

## I. *BACKGROUND*

The facts of this cause stem from a nuisance abatement action undertaken by City officials at McConnell's property and,

for the most part, those facts are uncontested. McConnell resides at 2110 South Lafountain Street and owns an adjacent lot located at 2100 South Lafountain Street. The lot is separated from McConnell's home by a fence, and officials were aware that the two pieces of property were separate lots. McConnell had posted "No Trespassing" signs on his property.

According to Defendants, both lots were in violation of the City's nuisance ordinance because they contained debris, such as litter and abandoned vehicles. On or about March 24, 2004, a City inspector served McConnell with an abatement notice. The evidence submitted by Defendants suggests that the abatement notice was served via certified mail, and the return receipt that appears to bear McConnell's signature is dated as March 29, 2004. Defendants contend that the officials intended the abatement notice to apply to both lots; however, the abatement notice fails to notify McConnell of a violation at his residence. Instead, it lists only the empty lot at 2100 South Lafountain Street as the "nuisance" property. Defendants assert that the failure to list both pieces of property on the abatement notice was a mere clerical error.

According to the abatement notice, McConnell had ten days from the date of service to comply with the abatement notice before it became final. Thereafter, on May 3, 2004, the Board of Public Works and Safety ("Board") held a hearing on the matter. McConnell did not attend the hearing. Like the abatement notice, the Board's minutes for the hearing—what Defendants style as the "Cleanup Order"—only list the property as 2100 South Lafountain Street and do not indicate that both pieces of property were at issue; however, City inspector Steven Barnett ("Inspector Barnett") testified at his deposition that he represented that both lots were at issue. At the hearing, Inspector Barnett presented testimony and evidence regarding the alleged violations at the property. Inspector Barnett informed the Board that he and another inspector, Joe Zuppardo ("Inspector Zuppardo"), had spoken with McConnell on two occasions and that McConnell had refused to comply with the request to clean up his property.

Following Inspector Barnett's presentation, Defendant Jeffrey S. Rudolph ("Rudolph"), one of the Board's members, moved for the Board to authorize City crews to enter McConnell's property and abate the nuisance by removing all abandoned vehicles, trash, and debris. Defendant Jack W. Dodd ("Dodd"), another Board member, seconded the motion and the motion carried based on Rudolph's and Dodd's votes. Because Rudolph and Dodd had both voted in favor of the motion, Defendant Phillip P. Williams ("Williams"), who presided over the Board, did not vote. However, after the meeting, Williams instructed Inspector Barnett to expedite the cleanup procedure by abating the nuisance the next day, which was the day of primary elections.

The next morning, a number of City employees arrived at McConnell's property. Lt. Shawn L. Haus ("Lt.Haus") of the Kokomo Police Department had been instructed to dispatch officers to the area for the cleanup of the property at 2110 South Lafountan Street based on a concern that McConnell might challenge the cleanup crews when they attempted to enter the property. Lt. Haus assigned several officers, including Sergeant Heath Haalek ("Sergeant Haalek") and Officer Roger Phillips ("Officer Phillips"), to assist him with preventing any injury to City employees.

When Lt. Haus arrived on the scene, he observed Inspectors Barnett and Zuppardo speaking with McConnell and overheard McConnell say "you're not coming

in here." McConnell then picked up a spear, walked toward Inspectors Barnett and Zuppardo, and yelled "if anyone comes on my property, they're going to get hurt." McConnell then replaced the spear. Several minutes later, a payloader started to drive toward the privacy fence on the north side of McConnell's property. McConnell picked up a large board from the ground and began yelling "you're not going in there." Lt. Haus saw McConnell raise the board over his shoulder like a baseball bat and begin walking toward City employees, including Inspectors Barnett and Zuppardo. Lt. Haus and Sergeant Haalek, fearful that McConnell was going to strike one of the men, ordered McConnell to put down the board. After McConnell failed to comply with the officers' orders, Sergeant Haalek shot McConnell with a taser. McConnell subsequently fell to the ground, was handcuffed, and arrested for resisting law enforcement, disorderly conduct, and intimidation. Officer Phillips assisted with taking McConnell into custody and transporting him to jail.

After McConnell was arrested, City employees proceeded to clean up both lots. Defendant Matt McKillip, then-Mayor of the City ("the Mayor"), was on the scene. Pat Munsey ("Munsey"), a reporter from a local newspaper, was also present and contends that the Mayor was overseeing the clean up of McConnell's property.[1] Munsey also avers that he interviewed the Mayor and other City employees and learned that the clean up effort was intended to fulfill the Mayor's campaign promise of beautification by targeting nuisance properties.

## II. SUMMARY JUDGMENT STANDARD

Motions for summary judgment are governed by Rule 56(c) of the Federal Rules of Civil Procedure, which provides in relevant part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Summary judgment is the "put up or shut up" moment in a lawsuit. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir.2003), *reh'g denied.* Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials which "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87,

---

1. In opposition to the motion for summary judgment, McConnell has submitted an affidavit signed by Munsey with an attached copy of a newspaper article Munsey wrote about the incident. Defendants have requested that the Court strike the article on the basis that it is hearsay and they rely on *Kodrea v. City of Kokomo,* 458 F.Supp.2d 857 (S.D.Ind.2006), to support their argument. The Court finds that the situation in *Kodrea* is distinct because in that case there was no supporting affidavit vouching for the newspaper article or including separate statements affirmed "under the penalties of perjury." Having been present at the scene, Munsey certainly has personal knowledge of events and can provide testimony about the same. Therefore, Defendants' request to strike the article is **DENIED.**

106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir.1996), *cert. denied*, 520 U.S. 1116, 117 S.Ct. 1246, 137 L.Ed.2d 328 (1997). It is not the duty of the Court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which he relies. *See Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir.1996). When the moving party has met the standard of Rule 56, summary judgment is mandatory. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Shields Enters., Inc. v. First Chi. Corp.*, 975 F.2d 1290, 1294 (7th Cir.1992).

In evaluating a motion for summary judgment, a court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party. *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir.1996), *cert. denied*, 519 U.S. 1109, 117 S.Ct. 945, 136 L.Ed.2d 834 (1997). The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir.1996). Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir.1992). "If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir.1996), *cert. denied*, 519 U.S. 1115, 117 S.Ct. 957, 136 L.Ed.2d 843 (1997).

## III. DISCUSSION

As an initial matter, the Court concludes that there is no issue that City officials had the right to enter and abate the perceived nuisance on the vacant lot. Therefore, the proper focus of this cause is on the entry of the residential lot. McConnell's claims are predicated on the notion that his procedural due process rights with respect to the residential lot were violated. Specifically, it is clear that he did not receive any notice and was not provided with an opportunity to be heard before City officials entered his residential property to abate a perceived nuisance. Therefore, absent some exigent circumstances, City officials had no right to enter the residential property. With this understanding of the case in mind, the Court turns to the arguments raised in the instant motion and responses thereto.

## A. OFFICIAL CAPACITY CLAIMS UNDER § 1983

■ McConnell has sued each of the defendants in his official capacity. Under § 1983, an official capacity suit represents "only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dep't of Soc. Serv.*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Thus, any official capacity claims against Defendants are really just claims against the City. *See Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). Moreover, McConnell can only be awarded damages from an official capacity suit if those damages would be recoverable against the City. *See Henry v. Farmer City State Bank*, 808 F.2d 1228, 1238 (7th Cir.1986).

■ It is well-established that a governmental entity cannot be held liable under § 1983 on a *respondeat superior* theory. *See Latuszkin v. City of Chicago*, 250 F.3d 502, 504 (7th Cir.2001). Instead, a

governmental entity is only liable under § 1983 when the execution of a government policy or custom "by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy" inflicts the injury of which a plaintiff complains. *See Monell,* 436 U.S. at 694, 98 S.Ct. 2018. Unconstitutional policies or customs can take three forms: (1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that, although unauthorized, is so permanent and well-settled that it constitutes a "custom or usage" with the force of law; or (3) an allegation that a person with final policymaking authority caused the injury. *See Rasche v. Vill. of Beecher,* 336 F.3d 588, 597 (7th Cir.2003). A single constitutional violation by a person with final policymaking authority may trigger liability under § 1983. *See Kujawski v. Bd. of Comm'rs,* 183 F.3d 734, 737 (7th Cir.1999).

█ In this case, McConnell has made no argument regarding a municipal policy or custom and he has not designated any evidence to support such a claim. From the Court's own review of the record, the only possible fact that might support such a claim is the suggestion from Munsey's newspaper article that the abatement process was intended to fulfill the Mayor's campaign promise of beautification by targeting nuisance properties. Even if that fact could support McConnell's claim, however, McConnell has not explained or developed that line of reasoning. The Court will not attempt to construct an argument on his behalf.

It was incumbent upon McConnell to demonstrate that a genuine issue of material fact existed on this issue by presenting some evidence to support his allegations that Defendants are liable in their official capacities. Because he has failed to do so, the Court **GRANTS** summary judgment for all Defendants in their official capacities. *See Roe–Midgett v. CC Servs., Inc.,*

512 F.3d 865, 876 (7th Cir.2008) (providing that undeveloped arguments are waived); *Johnson,* 325 F.3d at 898 (noting that a district court is not required to "scour every inch of the record" for evidence that is potentially relevant to a summary judgment motion); *John v. Barron,* 897 F.2d 1387, 1393 (7th Cir.1990) (providing that a court "is not obligated to research and construct legal arguments open to parties, especially when they are represented by counsel").

## B. PERSONAL INVOLVEMENT FOR § 1983 CLAIMS

█ Individual liability under § 1983 requires some personal involvement in the alleged constitutional deprivation. *See Palmer v. Marion County,* 327 F.3d 588, 594 (7th Cir.2003). "Although direct participation is not necessary, there must at least be a showing that the [defendant] acquiesced in some demonstrable way in the alleged constitutional violation." *Id.*

█ In this case, Defendants contend that the Mayor is entitled to summary judgment because he had no personal participation in the incident in question. Defendants also make a passing reference to Williams and suggest that including him as a defendant in this cause is frivolous because Williams did not participate in voting to order the clean up at McConnell's property. The Court rejects both arguments.

The evidence presented to the Court demonstrates that there is a genuine issue of material fact regarding the involvement of the Mayor and Williams. Specifically, with respect to the Mayor, Munsey's affidavit and attached article indicate that the Mayor was overseeing the abatement efforts and that those efforts were intended to help fulfill the Mayor's campaign promise of beautification. Based on that evidence, a reasonable jury could conclude

that the Mayor was directing the process and that he was motivated by a desire to make good on his campaign promise. With respect to Williams, there is deposition testimony from Inspector Barnett showing that Williams instructed Inspector Barnett to immediately begin the abatement process.

Based on the foregoing, the Court concludes that there is sufficient evidence to show the requisite degree of personal participation by the Mayor and Williams for § 1983 liability to attach. Therefore, Defendants' request for summary judgment on the alleged basis of non-involvement is **DENIED.**

## C. ASSERTIONS OF IMMUNITY FOR § 1983 CLAIMS

■ Liability under § 1983 requires proof of two essential elements: that the conduct complained of (1) was committed by a person acting under color of state law; and (2) deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. *See Larsen v. City of Beloit*, 130 F.3d 1278, 1282 (7th Cir.1997). In certain circumstances, however, defendants may be entitled to the defense of immunity for alleged violations. Defendants assert that this is a case where immunity should apply. Specifically, they contend that the Board members are entitled to absolute immunity and that the Mayor and police officers are entitled to qualified immunity.

### 1. *Absolute Immunity*

■ With respect to the Board members' claim of absolute immunity, the Court notes that "absolute immunity defeats a suit at the outset so long as the official's actions were within the scope of the immunity." *Imbler v. Pachtman*, 424 U.S. 409, 419 n. 13, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). In *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), the Supreme Court

extended the protective blanket of absolute immunity to federal agency officials who perform functions comparable to those of the judge and prosecutor, such as administrative law judges, agency officials who decide to initiate or continue administrative proceedings, and agency attorneys who present the evidence to the hearing officers. Based on *Butz*, the Court must consider whether the functions upon which the state officials would base their claim for immunity are "functionally comparable" to the activities of the judiciary. *See id.* at 513, 98 S.Ct. 2894. Moreover, the Court notes that the Board members bear the burden of demonstrating their entitlement to immunity. *See id.* at 506, 98 S.Ct. 2894.

■ In reaching its decision, the Court is cognizant of the "functional approach" used by the Seventh Circuit "[t]o determine whether absolute immunity attaches to the particular conduct of a judicial officer. . . ." *Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 622 (7th Cir.2002). In determining whether an individual is entitled to absolute immunity the focus should not be on the individual's position. *Id.* Rather, the focus must be on "the nature of the functions [the official] was performing in the case." *Mother Goose Nursery Schs., Inc. v. Sendak*, 770 F.2d 668, 671 (7th Cir.), *cert. denied*, 474 U.S. 1102, 106 S.Ct. 884, 88 L.Ed.2d 919 (1986). In making such a determination the Court must consider: (1) "the historical or common-law basis for the immunity in question," (2) "whether the functions which the official performs subject him to the same obvious risks of entanglement in vexatious litigation as is characteristic of the judicial process . . . [and] the possibility that losers will bring suit against the decision-makers in an effort to relitigate the underlying conflict . . . ," and (3) "whether the official is subject to checks upon abuses of author-

ity, such as the correction of error on appeal." *Id.*

Here, the Court concludes that the Board members' actions in this matter were functionally an adjudicatory matter. As the City's nuisance ordinance reveals, the Board members preside over a hearing where the City bears the burden of going forward to demonstrate that a violation exists, a party who has been cited can be represented by counsel and can present witnesses and evidence on his behalf along with oral argument, and the hearings are open to the public. *See* Defs.' Ex. 10. Moreover, as indicated by the Abatement Notice itself and as provided by Indiana law, any final determination of the Board is subject to judicial review in cases where a party has requested hearing by the Board. *See* Defs.' Ex. 6(b); Ind.Code § 4–21.5–5–1 *et seq.* Based on these circumstances, the Court concludes that the powers and duties of the Board members are functionally comparable to those performed by judges. *See, e.g., Reed v. Vill. of Shorewood,* 704 F.2d 943, 951–52 (7th Cir.1983) (holding liquor control commissioner acted in judicial capacity and was entitled to absolute immunity when deciding whether to renew or revoke licenses). Because the Board members act in a quasi-judicial capacity with respect to challenges to abatement notices, they are entitled to absolute quasi-judicial immunity against the Plaintiffs' federal claims against them. Accordingly, the Board members request for summary judgment must be **GRANTED** and the claims against them are **DISMISSED with prejudice.**

### 2. *Qualified Immunity*

The Court now turns its attention to the Mayor and the police officers, all of whom claim qualified immunity. Qualified immunity is an " 'entitlement not to stand trial or face the other burdens of litigation.' " *Saucier v. Katz,* 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). The privilege is " 'an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.' " *Id.* at 200–01, 121 S.Ct. 2151. As a result, the Supreme Court has stressed the importance of resolving immunity questions at the earliest stage of litigation. *Id.* at 201, 121 S.Ct. 2151

In addressing the qualified immunity issue, the Court must resolve two issues: (1) whether the facts alleged, taken in the light most favorable to McConnell as the nonmovant, show that the Mayor and the officers' conduct violated a constitutional right; and (2) if a violation could be established on a favorable view of the facts, whether the right was clearly established. *Id.* This inquiry must be undertaken "in light of the specific context of the case, not as a broad general proposition." *Id.* In addition, the "relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202, 121 S.Ct. 2151 (citing *Wilson v. Layne,* 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)).

Here, there should be no serious dispute that the rights McConnell claims were violated were clearly established. Specifically, it is commonly understood that officials may not enter a person's real property to search for or seize personal property absent authority to do so, that police officers may not use unreasonable or excessive force to detain or arrest an individual, and that police officers may not arrest a person without probable cause to do so. The only real question then is whether McConnell has demonstrated that

there is a genuine issue of material fact that the Mayor or the police officers in this case violated one of these rights.

With respect to the allegation that these defendants violated McConnell's right to be free from an unlawful search and seizure, the Court concludes that McConnell has demonstrated that there is such an issue. On its face, the Abatement Notice is fundamentally deficient in that it fails to provide the required notice that officials considered the residential lot at 2110 South Lafountain Street to be a nuisance and would be seeking to abate that nuisance absent corrective action by McConnell or a request for a hearing. While that deficiency alone is egregious, the problem is compounded by the fact that the minutes for the Board meeting of May 3, 2004, indicate that only the lot at 2100 South Lafountain Street was discussed. Based on these circumstances, a reasonable jury could readily conclude that McConnell's rights were violated. *See, e.g., Groh v. Ramirez,* 540 U.S. 551, 557–63, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004) (concluding that search based on facially deficient warrant must be treated as "warrantless" under the Fourth Amendment and presumptively unreasonable). Therefore, the request by the Mayor and the police officers for summary judgment on McConnell's unlawful search and seizure claim must be **DENIED.**

 The Court reaches a different conclusion regarding the claim of excessive force. Because McConnell's claim arises in the context of an arrest, the officers' use of force must be evaluated according to the Fourth Amendment's reasonableness standard. *See Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The reasonableness of an officer's decision must be determined from the view of the officer based upon the knowledge he had at the time of the incident. *See id.* at 396, 109 S.Ct. 1865. The determination must be made objectively, without regard to the officer's intent or motivation. *See id.* at 397, 109 S.Ct. 1865. Courts consider factors such as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396, 109 S.Ct. 1865. Courts also consider whether the citizen was under arrest or suspected of committing a crime, was armed, or was interfering or attempting to interfere with the officer's execution of his or her duties. *See Jacobs v. City of Chicago,* 215 F.3d 758, 773 (7th Cir.2000). Ultimately, the excessive force inquiry looks to whether the force used to seize the suspect was excessive in relation to the danger he posed—to the community or to the arresting officers—if left unattended. *See McDonald v. Haskins,* 966 F.2d 292, 294 (7th Cir.1992) (citing *Wilkins v. May,* 872 F.2d 190, 193 (7th Cir.1989), *cert. denied,* 493 U.S. 1026, 110 S.Ct. 733, 107 L.Ed.2d 752 (1990)).

In this case, the evidence overwhelmingly demonstrates that the officers' actions were reasonable. Perhaps the most compelling piece of evidence is the video submitted by Defendants. *See* Defs.' Ex. 8. That video shows McConnell approaching City employees with a board raised over his shoulder in preparation to strike the employees. As Defendants argue, and McConnell does not dispute, officers ordered McConnell to put the board down, but McConnell failed to comply with that order. It was at that point that the officers used a taser and then detained McConnell without any lasting injury. A reasonable jury could easily conclude that the force the officers used was necessary in order to ensure the safety of City employees and to prevent imminent harm. Therefore, Defendants' request for sum-

mary judgment on this claim is **GRANTED.**

Finally, the Court considers McConnell's false arrest claim. The Court notes that McConnell was arrested for disorderly conduct, intimidation, and resisting law enforcement. "It is well settled that the actual existence of probable cause to arrest precludes a § 1983 suit for false arrest." *Juriss v. McGowan,* 957 F.2d 345, 349 n. 1 (7th Cir.1992) (citing *Schertz v. Waupaca County,* 875 F.2d 578, 582 (7th Cir.1989)). Where an individual is arrested on multiple charges, a finding of probable cause for any one of the charges is sufficient to negate a § 1983 claim for false arrest. *See Ochana v. Flores,* 347 F.3d 266, 271 (7th Cir.2003) (noting that the presence of probable cause to arrest for any offense with which one is charged or a closely-related charge bars unlawful arrest claim); *Nielsen v. Vill. of Lake in the Hills,* 948 F.Supp. 786, 792 n. 6 (N.D.Ill. 1996) (noting that where there is more than one charge, the existence of probable cause for one of the charges is sufficient to justify an arrest and be a proper defense for arrest). Therefore, if probable cause existed to arrest McConnell for any one of the charges, his § 1983 claim for false arrest should be barred.

Here, the Court concludes that the officers had probable cause to arrest McConnell. Under Indiana law, disorderly conduct occurs, *inter alia,* when an individual recklessly, knowingly, or intentionally "engages in fighting or in tumultuous conduct." Ind.Code § 35–45–1–3. Indiana law defines "tumultuous conduct" as that which "results in, or is likely to result in, serious bodily injury to a person or substantial damage to property." Ind.Code § 35–45–1–1. *See also In the Matter of B.R. v. Indiana,* 823 N.E.2d 301, 306–07 (Ind.Ct.App.2005). Based on these definitions, a reasonable jury could only conclude that McConnell's conduct of attempting to strike City employees with the board and failure to comply with the officers' orders to put the board down was tumultuous conduct. As such, the Court finds that the police officers are entitled to summary judgment on McConnell's false arrest claim.

The Court's conclusion is not altered by McConnell's argument that he was justified in using force to prevent the City employees from entering his property. Indeed, the bulk of McConnell's argument in opposition to the motion for summary judgment is predicated on this argument. The argument is not without some support because Indiana law does permit the use of reasonable force to protect a person's dwelling and curtilage. *See* Ind.Code § 35–41–3–2(b). It is questionable whether a reasonable jury could conclude that McConnell's attempted use of force in this case was justified, particularly when police officers were ordering McConnell to drop the board. Moreover, this is not a case of a criminal or unknown assailant attempting to enter McConnell's land and abscond with his property; this was a case of readily-identifiable government officials attempting to abate a perceived nuisance, and McConnell could have employed other and more peaceful methods to protest their actions.

The Court need not resolve that issue, however, because even if a jury could conclude that McConnell's attempt to use force was reasonable, the argument is irrelevant to the question of whether the officers had probable cause to arrest McConnell. This is because McConnell's argument is a defense that he would have to prove in a criminal trial in order to justify what would otherwise be a crime and, as such, would not prohibit the officers from arresting McConnell. *See Hanic v. Indiana,* 406 N.E.2d 335, 339 (Ind.Ct. App.1980) (concluding that defense of

property is analogous to a claim of self-defense); *Moon v. Indiana,* 823 N.E.2d 710, 716 (Ind.Ct.App.2005) (providing that claim of self-defense is a defense of justification for the commission of a crime). Accordingly, the Court **GRANTS** the request for summary judgment on the false arrest claim

## D. INDIANA CONSTITUTIONAL CLAIM

 McConnell alleges that Defendants' actions violated his rights under the Indiana Constitution, namely, Article I, section 11. Defendants argue that they are entitled to summary judgment on this claim because Indiana does not recognize a private right of action to pursue damages for alleged violations of the Indiana Constitution.

This Court has previously considered the question of whether an individual can bring a private cause of action for damages under the Indiana Constitution. In *Boczar v. Kingen,* Cause No. IP 99–141–C–T/G, 2000 WL 1137713, *24–25 (S.D.Ind. Mar. 9, 2000), *aff'd,* 6 Fed.Appx. 471 (7th Cir.2001), this Court declined to recognize an implied right of action for damages directly under the Indiana Constitution, at least absent a clear indication from Indiana courts that such an action is available. *See also Baker v. Wash. Bd. of Works,* Cause No. IP 99–642–C–T/G, 2000 WL 33252101, *8 (S.D.Ind. June 8, 2000). Since *Boczar* was decided, several cases in this district have refused to find that an implied right of action exists under the Indiana Constitution. *See, e.g., Fermaglich v. Indiana,* Cause No. IP 01–1859–T/K, 2004 WL 2750262, *44 (S.D.Ind. Sept. 29, 2004); *Estate of O'Bryan v. Town of Sellersburg,* Cause No. 3:02–cv–238–DFH–WGH, 2004 WL 1234215, *21 (S.D.Ind. May 20, 2004); *Malone v. Becher,* Cause No. NA 01–101–C H/H, 2003 WL 22080737, *18–19 (S.D.Ind. Aug. 29, 2003); *Willits v. Wal–Mart Stores, Inc.,* Cause

No. IP 99–276–C–M/S, 2001 WL 1028778, *15 (S.D.Ind. July 30, 2001). In fact, the Indiana Supreme Court recently recognized that Indiana has no statutory provision like § 1983 that creates an explicit civil remedy for constitutional violations by individual officers or governmental entities. *See Cantrell v. Morris,* 849 N.E.2d 488, 493 (Ind.2006).

In light of *Cantrell* and the absence of any authority to the contrary, the Court sees no reason to depart from its prior decisions on this subject. Accordingly, to the extent that McConnell raises a claim for damages under the Indiana Constitution, the Court **GRANTS** Defendants' request for summary judgment on it and **DISMISSES** the claim.

## E. APPLICATION OF THE INDIANA TORT CLAIMS ACT

 Defendants contend that the Indiana Tort Claims Act ("ITCA") shields them from liability for McConnell's state law claims. ITCA provides that a lawsuit alleging that a government employee acted within the scope of his employment is barred against the employee personally. *See* Ind.Code § 34–13–3–5(b). In fact, a lawsuit against a government employee in his personal capacity must specifically allege that the employee acted outside of the scope of his employment or that the employee's act or omission was criminal, malicious, willful and wanton, or calculated to benefit the employee personally. *See* Ind. Code § 34–13–3–5(c). Moreover, ITCA provides that neither a governmental entity nor a government employee acting within the scope of his employment is liable if a loss results from the adoption and enforcement of a law, "unless the act of enforcement constitutes false arrest or false imprisonment." Ind.Code § 34–13–3–3(8). Indiana Courts have made clear that the ITCA goes so far as to protect officers

from liability for both tortious and even criminal acts where the purpose of the employee's conduct was to further the employer's business. *See City of Anderson v. Weatherford*, 714 N.E.2d 181, 186 (Ind.Ct. App.1999) (citing *Kemezy v. Peters*, 622 N.E.2d 1296, 1298 (Ind.1993)). However, the Court notes that, in addition to claims of false arrest or false imprisonment, the use of excessive force is not immunized conduct under Indiana law. *See Kemezy*, 622 N.E.2d at 1297. Thus, if Defendants were acting within the scope of their employment, the only possible state law claims that McConnell would have would be false arrest, false imprisonment, or excessive force.

Here, McConnell has not alleged in his Complaint that any of Defendants were acting outside of the scope of their employment, and he has presented no evidence suggesting that this was the case. Similarly, he has neither alleged nor presented evidence suggesting criminal, malicious, or willful and wanton conduct. In fact, the evidence before the Court demonstrates overwhelmingly that Defendants were acting within the scope of their employment to enforce local nuisance laws or, in the case of the police officers, to ensure safety and security of other City employees during the enforcement process. Thus, with the exception of any false arrest, false imprisonment, or excessive force claims, the Court concludes that Defendants are immune from liability under ITCA for McConnell's state law tort claims. Therefore, the Court **GRANTS** Defendants' request for summary judgment on those claims and **DISMISSES** them accordingly.

## F. CONSIDERATION OF REMAINING STATE LAW CLAIMS

As noted, the only remaining state law tort claims are those of false arrest, false imprisonment, and excessive force. The Court notes that these claims stem from the individual police officers' activities and not those of the Board members or the Mayor. Consequently, the Court will consider this claim as one against the officers only.

Generally, to succeed upon a claim of false arrest or false imprisonment, Indiana law requires a plaintiff to establish the absence of probable cause for the arrest. *See Garrett v. City of Bloomington*, 478 N.E.2d 89, 93 (1985), *trans. denied*. Probable cause for an arrest exists when the facts and circumstances known to the arresting officer would warrant a person of reasonable caution and prudence to believe that the accused has committed or was committing a crime. *See Gomez v. Adams*, 462 N.E.2d 212, 222 (Ind.Ct.App. 1984), *reh'g denied*. Moreover, a party bringing a claim of false arrest in Indiana must demonstrate that an officer did not act in good faith when he made an arrest, a standard less stringent than probable cause. *See Garrett*, 478 N.E.2d at 94–95. In other words, the party must demonstrate that an arrest is "made in bad faith or with an unreasonable belief in the constitutionality of [the officer's] actions." *Id.* at 95. Finally, with respect to false imprisonment, Indiana law holds that when an officer has lawfully arrested an individual "he may detain such person for a time reasonably necessary to bring the arrestee before a magistrate, or to obtain a warrant." *Gomez*, 462 N.E.2d at 222. As previously discussed with respect to McConnell's § 1983 false arrest claim, the officers had probable cause to arrest McConnell for, at a minimum, disorderly conduct. Therefore, like their § 1983 counterpart, McConnell's state claims of false arrest and false imprisonment must fail. Accordingly, Defendants' request for summary judgment on those claims is **GRANTED.**

Similarly, the Court concludes that Defendants are entitled to summary judgment on the state law excessive force claim. In Indiana, "[e]xcessive force claims are governed by a Fourth Amendment objective reasonableness standard ... [and] must be evaluated from the perspective of the 'reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *O'Bannon v. City of Anderson,* 733 N.E.2d 1, 3 (Ind.Ct.App. 2000) (quoting *Graham,* 490 U.S. at 388, 396–97, 109 S.Ct. 1865). Moreover, Indiana Code § 35–41–3–3 authorizes officers to use reasonable force to effect lawful arrests. *See N.J. ex rel. Jackson v. Metro. Sch. Dist. of Wash. Twp.,* 879 N.E.2d 1192, 1197 (Ind.Ct.App.2008).

As the Court has already concluded when it addressed McConnell's § 1983 excessive force claim, the evidence overwhelmingly demonstrates that the officers actions were reasonable. The amount of force used by the officers was consistent with what was necessary to stop the immediate threat of harm to City employees and to detain McConnell. The Court finds that no reasonable jury could conclude otherwise. Therefore, Defendants' request for summary judgment on the state law claim of excessive force is **GRANTED.**

## IV. *CONCLUSION*

For the foregoing reasons, Defendants' Motion for Summary Judgment (Docket No. 31) is **GRANTED in part and DENIED in part.** The only claim that survives summary judgment is the one Plaintiff brings pursuant to § 1983 against the Mayor and the police officers in their individual capacities for unlawful search and seizure at 2110 South Lafountain Street. All other claims are hereby **DISMISSED with prejudice.**

IT IS SO ORDERED this 30th day of July, 2008.